DAVID LEMIEUX & CO. *vs.* GEORGE E. LETOURNEAU ET AL.

Androscoggin.     Opinion April 21, 1931.

*Benjamin L. Berman,*
*David V. Berman,*
*Jacob H. Berman,*
*Edward J. Berman,* for plaintiff.
*Waterhouse, Titcomb & Siddall,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

PATTANGALL, C. J.    On motion. Action on account annexed for labor performed and material furnished in the erection of a hotel. Defendants plead the general issue and, as a matter of special defense, "That the several items in plaintiff's writ are embraced in the provisions of a written contract entered into by plaintiff and defendant."

Plaintiff admitted that such a contract was executed and that the building was partially constructed under it but claimed that, during the progress of the work, on account of certain controversies concerning changes in the plans, the written contract was abandoned and a new agreement made whereby it was to receive compensation on the basis of *per diem* charges for labor, actual cost of material and a reasonable charge for superintendence.

While specifically denying any abandonment of the contract, defendants admitted that in addition to the price stated therein,

plaintiff was entitled to some compensation on account of certain minor changes in the plans and specifications and, on the other hand, contended that they were entitled to credit because of having paid substantial bills for materials in order to relieve the property from lien claims.

It was apparent that however the principal contentions might be decided, the services of an auditor would be required in the final adjustment of the controversy, and the parties therefore agreed that the jury should be required to do no more than answer the question: "Was the written contract, dated October 19, 1928, between the plaintiff and defendants, abandoned?"; to which the jury answered, "Yes."

The conclusion thus reached is binding upon this court unless the evidence preponderates so strongly against it as to make it a moral certainty that the jury erred. *Inhabitants of Enfield* v. *Buswell et al*, 62 Me., 128 ; *Smith* v. *Brunswick*, 80 Me., 191.

There was no dispute as to certain facts. Defendants projected the building of a hotel. An architect was employed, plans were made and bids asked for. Plaintiff submitted a bid. The amount was very much larger than defendants desired to invest and the plans were materially changed with the idea of reducing the cost of the building. Plaintiff examined the new plans and specifications and reduced its bid to conform to the changed conditions. Its bid was accepted, a contract was executed, work was begun on the building in the latter part of October, 1928, and continued until December 15 following when it was suspended until February 4, 1929.

In February one man worked five days and one-half on the job. In March the labor bill amounted to $334.73. In April the work was resumed on a substantial scale and continued until June 6 when the building was completed.

Plaintiff's contract called for payment to it of $13,660.00. Including a payment of $500.00 on May 17, it received from defendants $10,632.75 and an order for $646.00 which it credited, making an admitted total credit of $11,278.75. In addition to these payments, defendants were liable for material bills amounting to four or five thousand dollars, so that unless plaintiff was entitled to a very substantial allowance for work and material not covered

by the contract, it had received all that was due it, assuming that the original contract remained in force.

It was plaintiff's contention that the contract was abandoned in April, 1929, by mutual agreement and the new arrangement heretofore referred to substituted.

Its account annexed totalled $18,026.02. In this was included contractor's profit, $1,493.18; bill of Pineland Lumber Company, $272.69; bill of A. N. Parent, $1,321.25; and bill of F. R. Conant Co., $3,048.74. There were also included per diem charges for superintendence at the rate of $15.00 per day, amounting to $670.00. These bills totalled $6,805.86. The Lumber Company bill, Parent's bill and Conant's bill had already been paid by defendants. There was then nothing due plaintiff on its own theory excepting its bill for superintendence and contractor's profit. On the other hand, on defendants' theory, plaintiff owed them between one and two thousand dollars.

It was obviously impossible to reach a final adjustment without the assistance of an auditor. All that could be determined in a trial before a jury was to fix a basis on which the accounting should be made. The plaintiff assumed the burden of proving the abandonment of the original contract and the substitution therefor of the agreement upon which it based its claim.

The record is voluminous. Including the exhibits, it fills three hundred and thirty-five pages, but the evidence directly bearing upon the question submitted to the jury is singularly brief.

Plaintiff's agent, Mr. Boucher, testified that defendant George E. Letourneau insisted on so many changes in the plans and interfered with the progress of the work to such an extent that he, Boucher, on behalf of the plaintiff, at some time in April informed Letourneau that plaintiff considered the contract breached by defendants and would go no farther on the job unless some satisfactory agreement was substituted for the original undertaking, which he says was done. Mr. Boucher was unable to fix the exact date when the new contract was made but from certain admitted facts, it must have been made on April 22, 1929, if made at all.

The changes in the plans were not extensive. They related principally to the work done in February and March, which, as has been indicated, was unimportant. Plaintiff could easily have kept

an account of them as extras and have been compensated for them under that head. They were not sufficient to create a situation which warranted it in rescinding the contract. Rescission could only be based on mutual agreement.

The case is bare of credible evidence that any such agreement was reached. Mr. Boucher's testimony on this point is not only squarely contradicted by Mr. Letourneau but stands without corroboration, and the record contains abundant evidence in support of defendants' position.

The building was erected under the supervision of an architect. Plaintiff drew money from time to time on architect's certificates. On April 17, Certificate No. 6 was issued. It read as follows:

"$1000.00    CERTIFICATE No. 6    PLAN No.    Apr. 17, 1929
To George E. Letourneau.
This is to Certify that under the terms of Contract dated
............ for work on Hotel at Old Orchard, Me. David Lemieux & Co., contractor for General Construction is entitled to the six payment amounting to ..................
One thousand and 00/100 ..................... Dollars.
Notice
    Amount of Contract    $13660.00
    · Additions to Contract
    Deductions from Cont.                    Pulsifer & Eye, Inc.,
    ──────────                                Architects,
    Total            $13660.00                    163 Main St.,
                                              Lewiston, Me.
Am't this Cert. $1000.00
Previously paid  8132.75        GIBBS & PULSIFER, Architects
                                        Per A. G. Pulsifer.
    Total paid to date    9132.75
    ──────────
    Balance            $4527.25"                    ▶

On April 22, the very date when Mr. Boucher says the contract was abandoned and the new contract made, he signed the following receipt on the back of this certificate:

"$1000.00                              Lewiston, Me., 4/22, 1929.
    RECEIVED FROM George E. Letourneau ...............
One thousand and 00/100 ..................... Dollars
as per enclosed Certificate.          David Lemieux & Co.,
                                        by J. C. Boucher."

On May 4 another certificate, exactly similar in form, was issued, authorizing the payment of $1,000 on the contract and receipted for, in like manner, by Boucher for plaintiff.

On May 17, a payment of $500 was made, certificate issued and receipt signed as before, the existence of the contract being again specifically recognized.

On May 10, the architect wrote plaintiff the following letter:

"David Lemieux & Co.,
110 Chestnut St.,
Lewiston, Me.
Gentlemen:

In your contract dated October 19, 1928 with Mr. George E. Letourneau you agreed to deliver the building substantially completed May 15th, 1929. We cannot see any material progress in your work since our last visit. Something will have to be done at once to speed up this work.

We refer you to article 21 and 22 of your contract. Your painter is one week late, also your outside stucco.

This letter is not intended to cause friction between the parties involved but to ask you to speed up the work and bring it to as early a closing as possible.

The concrete mix for the floor in the basement is too wet for a floor laid over sand as the extra water draws the cement to the bottom of the slab and will cause trouble. You will be held responsible for this floor curling or cracking. It is a deplorable fact that the entire plastering job is very unsatisfactory both as to materials and workmanship.

                              Very truly yours,
                                  PULSIFER & EYE, INC."

On June 4, the architect wrote plaintiff the following letter:

"David Lemieux & Co.,
110 Chestnut St.,
Lewiston, Me.
Gentlemen:

In regard to the finishing of the building for Mr. George E. Letourneau at Old Orchard, Maine, there are a great many items that are being overlooked or being taken up at the wrong time, so that when they are done causes dirt and defaces the floors, etc., such as repairing the plastered walls and cleaning the plaster where it is dirty by your own workmen, also the fireplace. Washing the windows, your man started to clean the glass with an old pair of pants dry and scratched the glass badly. The doors that were hung wrong were patched badly and will have to be renewed. Some of the floors are wavy and imperfectly buffed.

The concrete floor in the basement was mentioned in our previous letter. It is still unsatisfactory.

The basement window openings are not straight and square. Mr. Boucher promised to correct this before the stucco was applied.

Very truly yours,

PULSIFER & EYE, INC.

Copy to: Mr. George E. Letourneau."

On June 21, the architect wrote plaintiff the following letter:

"David Lemieux & Co.,
110 Chestnut St.,
Lewiston, Me.
Gentlemen:

In regard to the final completion of the building for Mr. George E. Letourneau at Old Orchard, Maine.

Mr. Pulsifer visited the building Thursday, June 10th and there are many items that are not accepted. There are several broken lights of glass and many lights that are scratched badly.

The floors are rough and poorly buffed.

The concrete floor in the basement has been treated with a cement wash and dust, and tracks all over the house.

The painting is not acceptable and is hereby rejected.

There are several doors that are not accepted.

These items must be made good or an adjustment made before you can get the approval of the Architects.

Very truly yours,<br>PULSIFER & EYE, INC.

Copy to George E. Letourneau."

Not until after June 21 did plaintiff inform the architect of the claimed change in the contract. In fact, when, on May 17, it requested defendants to pay $500, it went to the bother and expense of taking the architect from Lewiston to Old Orchard to discuss the matter with Letourneau and order the payment.

Boucher's conduct in the light of the documentary evidence is so directly contradictory to his present claim that it is only possible to account for the verdict of the jury on the ground that it utterly failed to comprehend the force and bearing of the testimony.

Written contracts are not to be lightly set aside. The business of the world depends upon them. It is no exaggeration to say that if they had no binding force, orderly civilization, as we understand it, would end. True, such contracts may be rescinded or modified by agreement of parties and new and different arrangements substituted for them; but to assume such a proposition simply because one party to the contract asserts it, when every admitted fact contradicts the assertion and no single incident even tends to support it, would make such contracts of less value than the paper on which they are written.

*Motion sustained.*
*Verdict set aside.*
*New trial ordered.*